**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

**KENNETH A. THOMAS MD, LLC**, a Connecticut limited liability company, individually and on behalf of all others similarly situated,

*Plaintiff,*

*v.*

**CURATIVE INC.**, a Delaware corporation,

*Defendant.*

Case No. 1:26-cv-3130

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kenneth A. Thomas MD, LLC ("Thomas" or "Plaintiff") brings this Class Action Complaint against Defendant Curative Inc. ("Curative") to stop the Defendants' practices of sending unauthorized and unwanted fax advertisements, and to obtain redress and recover damages for all persons and entities similarly injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to itself and its own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by its attorneys.

## NATURE OF THE ACTION

1. This case challenges Defendant Curative's practice of sending unsolicited advertisement material using fax messages to doctors' offices.

2. As such, Defendant's fax advertisements violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and caused Plaintiff and putative members of the Class to suffer actual harm, including the aggravation and nuisance of receiving such faxes, the loss of use of their fax machines during the receipt of such faxes, and increased labor expenses.

3. Accordingly, Plaintiff seeks an injunction requiring Defendant to cease all unauthorized fax-based marketing activities, as well as an award of statutory damages, along with costs.

## PARTIES

4. Plaintiff Kenneth A. Thomas MD, LLC is a Connecticut limited liability company with its principal place of business in Stratford, Connecticut.

5. Defendant Curative Inc. is a Delaware corporation with its principal place of business in Austin, Texas. Defendant Curative conducts business throughout the US.

## JURISDICTION & VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

7. This court has personal jurisdiction over the Defendant because the Defendant is located in this District and does business from this District.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is located in this District and directed its wrongful conduct from here.

## COMMON ALLEGATIONS

9. Curative Inc. is a healthcare services company that provides health insurance plans to employers throughout the U.S.[1]

10. Curative Inc. maintains a healthcare network of medical providers who accept Curative's health insurance plans.

11. The fax advertisements sent to Plaintiff solicited participation in the Curative

[1] https://www.linkedin.com/company/curativeinc/about/

provider network, including proposed reimbursement arrangements, streamlined billing procedures, and inclusion in Curative's provider directory.

12. To solicit health providers into joining its healthcare network, Curative sends out fax advertisements, oftentimes to practices that have never provided consent to receive the faxes.

13. Curative uses an artificial intelligence ("AI") agent known as "Gwen" to communicate with and solicit health providers to join the Curative network of medical providers.

14. Curative's CEO – Fred Turner[2] gave an interview that was posted on Facebook by Neo Niche in which Turner explains how Gwen researches doctors, negotiates rates, and signs network contracts:



[3]

15. Turner also explains in this interview that using Gwen brought Curative from 100 contracts a week to 100 contracts a day.[4]

16. The fax advertisements that Plaintiff received identify the name Gwen, and the email gwen@curative.com:

---
[2] https://curative.com/about-us/leadership
[3] https://www.facebook.com/watch/?v=978828118536742
[4] Id.

I'd welcome the chance to discuss this further. You can reach me at gwen@curative.com or fax back to 855-606-8468.

Warm regards,
Gwen, Network Contracting, Curative

**How to reply:** email **gwen@curative.com** (fastest), or fax this page back to the sending number with your notes. Please keep the reference code **Ref: GW-4A8MFE** in your reply so it reaches the right person.

17. According to Curative's Resources for Providers document, employees typically use an email address containing their full name. For example:

General Info: providerrelations@curative.com
Natalie Russell, Director of Network Development (natalierussell@curative.com)
Irene Gonzalez, Provider Relations (irenegonzalez@curative.com)

General Info: credentialing@curative.com
Arlene Abdelhafez, Credentialing Specialist (arleneabdelhafez@curative.com) [5]

18. Upon information and belief, the fax advertisements that Curative sends out are from its AI agent – Gwen, or gwen@curative.com.

19. Upon information and belief, Curative authorized, directed, controlled, and participated in the transmission of the unsolicited fax advertisements that Gwen has been sending out, such as those received by the Plaintiff.

20. Based on the above, the AI agent Gwen is sending out hundreds, if not many thousands of fax advertisements to potential healthcare providers throughout the US, such as the Plaintiff who received 4 individual fax advertisements.

21. The fax advertisements that Curative sends out are solicitations.

22. The fax advertisements solicited Plaintiff to enter into a commercial provider agreement with Curative under which Plaintiff would provide healthcare services to Curative's insured members in exchange for reimbursement, pursuant to negotiated contractual rates.

[5] https://static.curative.com/health_plan/provider-resources.pdf

23. The advertisements promoted the financial and administrative benefits of participating in Curative's provider network, including reimbursement arrangements, simplified billing procedures, reduced administrative responsibilities, and inclusion in Curative's provider directory. The advertisements were intended to induce Plaintiff and other healthcare providers to enter into a commercial contractual relationship benefiting Defendants' insurance and provider-network businesses.

24. According to the 2026 Provider Manual from Curative, participating physicians must accept negotiated rates, which can come at a cost or depreciated value to the physician:

> **Our Plan**
>
> In-Network and Out-of-Network benefits apply to eligible employees and their dependents and services are limited to the allowable amount as determined by **Curative**. All In-Network providers have agreed to accept the **Curative** allowable amount. For Out-of-Network providers, any charges over the allowable amount for services are the patient's responsibility, in addition to the deductible and coinsurance.
>
> If the member completes their Baseline Visit within 120 days of their effective date in the **Curative** Plan, most copays, deductibles and coinsurances will be waived. In-Network providers will receive the **Curative** allowable amount, as defined by the contract. Maximum visits and limitations will continue to apply.
>
> The Baseline Visit is an appointment with a **Curative** Clinician for the Clinical Assessment related to the member's current health status to help them optimize their health care. The Assessment will also include an Evaluation of Preventive recommendations indicated by United States Preventive Services Task Force (USPSTF) and whether immunizations are up to date. The member will be assigned and meet with their Care Navigator for an orientation on the plan benefits, how to access In-Network providers and address any current physician or pharmacy needs.

[6]

> **Reimbursement & Allowable Amount**
>
> Curative reimburses covered services at the lesser of (a) the provider's billed charges, or (b) the contracted rate or fee schedule amount applicable under your Provider Agreement. The lower of these two amounts is the Allowable Amount. Where your Agreement establishes a different reimbursement methodology, the terms of your Agreement control.
>
> **Billed charges operate as a payment ceiling.** As a matter of standard practice, Curative does not pay more than the amount billed on a claim, even where the contracted rate for that service is higher. Providers should bill their usual and customary charges for each service rendered.
>
> **The Allowable Amount represents payment in full.** Curative's payment plus any applicable member cost share will not exceed the Allowable Amount, and participating providers may not bill the member for the difference. Allowable Amounts remain subject to Curative's Payment Policies.

[7]

---

[6] https://assets.ctfassets.net/sa71woberbfe/576FYakh0YVCvJ76BL7KO1/8841c7e1dc167289cfc3c84d0f101064/2025_Provider_Manual_v7.pdf

[7] https://d24t5wk6agv5q5.cloudfront.net/Curative_Provider_Manual_9_2026_490b3bbaea.pdf

25. By charging the "Curative allowable amount," a doctor may be unable to charge the fee normally associated with a service, meaning they are receiving less than they would by dealing with a patient directly.

26. Upon information and belief, Curative Inc. participated in, authorized, directed, or caused the transmission of the unsolicited fax advertisements described herein through Curative's network-contracting operations, including its automated contracting agent known as "Gwen."

27. Accordingly, Plaintiff seeks an injunction requiring Defendant to cease all unauthorized fax-based marketing activities, as well as an award of actual and statutory damages, along with costs and reasonable attorneys' fees.

**PLAINTIFF THOMAS' ALLEGATIONS**

28. On September 9, 2026 at 5:30 AM, Defendant Curative sent a fax advertisement to Plaintiff Thomas's fax machine. (True and accurate copies of the fax advertisements are attached hereto as Exhibit A).

29. The unsolicited fax advertisement was sent to induce Plaintiff Thomas to join Curative's provider network:

I'm reaching out from Curative to invite Kenneth A. Thomas MD FACOG LLC to join our growing provider network. Curative's $0 health plan - with $0 copays, $0 deductibles, and $0 coinsurance for members - is expanding rapidly in Connecticut, and we'd love to have your OB/GYN practice as an in-network partner.

Our OB/GYN reimbursement rates are designed to be competitive: OB global packages at 100% of Medicare, E&M services at 95%, and surgical procedures at 100%. As a solo practitioner, the onboarding process is straightforward - just a credentialing form and W-9, with no separate roster needed.

Joining means your patients with Curative coverage see zero out-of-pocket costs for prenatal care, well-woman visits, and gynecological services - making your practice an even more attractive choice for expectant mothers and women's health patients in the Stratford and Bridgeport area.

I'd welcome the chance to discuss this further. You can reach me at gwen@curative.com or fax back to 855-606-8468.

Warm regards,
Gwen, Network Contracting, Curative

30. This fax advertisement states that E&M services are reimbursed at 95%.

31. On September 16, 2026 at 7:30 AM, Defendant Curative sent a 2nd fax

advertisement to Plaintiff Thomas's fax machine. (True and accurate copies of the fax advertisement is attached hereto as Exhibit B).

32. The unsolicited fax advertisement was sent to induce Plaintiff Thomas to join Curative's provider network:

Dear Dr. Thomas,

I'm reaching out from Curative about joining our provider network. With Curative members in the Stratford and greater Bridgeport area looking for OB/GYN care, we'd love to have your practice in-network.

One thing that sets Curative apart: our plan has **$0 copays, $0 deductibles, and $0 coinsurance** for members. For your office, that means no copay collection at the front desk, no deductible tracking, and no patient balance billing - just clean claims and straightforward reimbursement at competitive rates (OB global packages at 100% of Medicare, E&M at 95%).

Joining is simple for a solo practice - just a credentialing form and W-9, and we handle the rest. I'd love to get the conversation started.

Gwen
Network Contracting, Curative
gwen@curative.com

33. This fax advertisement also states that E&M services are reimbursed at 95%.

34. On September 23, 2026 at 5:48 AM, Defendant Curative sent a 3rd fax advertisement to Plaintiff Thomas's fax machine. (True and accurate copies of the fax advertisement is attached hereto as Exhibit C).

35. The unsolicited fax advertisement was sent to induce Plaintiff Thomas to join Curative's provider network:

Dear Dr. Thomas,

As an OB/GYN with privileges at Bridgeport Hospital, you know the value of continuity of care – from first prenatal visit through delivery and postpartum. Your patients who are Curative members deserve that same seamless experience, and a direct contract with Curative makes it happen.

When you're in our network, your patients' care - office visits, ultrasounds, lab work, and delivery at Bridgeport Hospital - is covered under one coordinated plan with **$0 out-of-pocket costs** for members. No surprise bills, no coverage gaps between your office and the hospital.

Curative's reimbursement is competitive: OB global packages at 100% of Medicare, E&M at 95%, and surgical services at 100%. The paperwork is straightforward - just a credentialing form and W-9 for a solo practice like yours.

I'd love to get your practice set up. You can reply by email at gwen@curative.com or fax documents back to 855-606-8468.

Warm regards,
Gwen
Network Contracting, Curative

36. This fax advertisement also states that E&M services are reimbursed at 95%.

37. On September 30, 2026 at 7:22 AM, Defendant Curative sent a 4th fax advertisement to Plaintiff Thomas's fax machine. (True and accurate copies of the fax advertisement is attached hereto as Exhibit D).

38. The unsolicited fax advertisement was sent to induce Plaintiff Thomas to join Curative's provider network:

Dear Dr. Thomas,

I'm reaching out from Curative to share a benefit of joining our provider network that solo practitioners often appreciate: **visibility in our member-facing provider directory**.

When you join Curative's network, your practice at 305 Boston Ave in Stratford is listed in our searchable directory, making it easy for Curative members in the Bridgeport-Stratford area to find you as their OB/GYN. For a solo practice, this kind of built-in referral channel can be a real advantage.

As a reminder, Curative's $0 member plan means no copays, no deductibles, and no coinsurance - so your patients never face surprise bills, and your office spends less time on collections and payment disputes.

Joining is straightforward: just a W-9 and a credentialing form - no lengthy applications. I'd be happy to walk you through the details.

Warm regards,
Gwen
Network Contracting, Curative

39. This fax advertisement advertises the commercial benefit of visibility in Curative's member-facing provider directory, as per the screenshot above.

40. On October 16, 2026 at 9:48 PM, Defendant Curative sent a 5th fax advertisement to Plaintiff Thomas's fax machine. (True and accurate copies of the fax advertisement is attached hereto as Exhibit E).

41. The unsolicited fax advertisement was sent to induce Plaintiff Thomas to join Curative's provider network:

> Dear Dr. Thomas,
>
> As one of the few bilingual OB/GYN providers in the Stratford area offering care in both English and Spanish, your practice fills a vital need for families navigating pregnancy and women's health.
>
> Curative's $0 health plan - with $0 copays, $0 deductibles, and $0 coinsurance - removes financial barriers that too often delay prenatal care and routine gynecological visits, especially for families who already face language access challenges. Joining our network means your bilingual care reaches even more patients who need it most.
>
> Our OB/GYN reimbursement is competitive: OB global packages at 100% of Medicare, E&M visits at 95%, and surgical services at 100%. Onboarding is straightforward for a solo practice - most providers complete it in under a week.
>
> I'd welcome the chance to share more details. You can reply to this fax, email me at gwen@curative.com, or fax back to 855-606-8468.
>
> Warm regards,
> Gwen
> Network Contracting, Curative

42. This fax advertisement also states that E&M services are reimbursed at 95%.

43. Plaintiff did not provide permission to Defendant to send it fax advertisements, or faxes at all.

44. Plaintiff has never been a customer of Defendant, nor has it ever been interested in being a customer of Defendant.

45. The fax occupied Plaintiff's fax line, making it unavailable for legitimate communications.

46. The fax advertisements received by Plaintiff contained purported opt-out notices directing recipients to submit opt-out requests by emailing gwen@curative.com or by returning a fax to the sending fax number, 855-606-8468. However, the fax advertisements did not contain a domestic contact telephone number for submitting opt-out requests. Upon calling 855-606-8468,

Plaintiff's counsel encountered what appeared to be a facsimile machine rather than a telephone system capable of receiving voice requests. Under 47 U.S.C. § 227(b)(2)(D)(iv)(I) and 47 C.F.R. § 64.1200(a)(4)(iii)(D)(1), an opt-out notice must include a domestic contact telephone number and facsimile machine number. Plaintiff alleges that the notices failed to satisfy this requirement and, consequently, failed to meet the opt-out notice condition of the established-business-relationship exception under 47 U.S.C. § 227(b)(1)(C)(iii).

47. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were subjected to annoying and harassing faxes that constituted a nuisance, and their fax lines were rendered unavailable for lawful communications.

## CLASS ACTION ALLEGATIONS

48. **Class Definition:** Plaintiff Thomas brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) individually and on behalf of Class of similarly situated individuals as follows:

> **Unsolicited Fax Message Class:** All persons and entities to whom: (a) Defendant and/or a third party acting on Defendant's behalf sent one or more faxes; (b) advertising Defendant's services (c) at any time in the period that begins four years before the date of filing this complaint and ends at the date of trial..

49. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the

need to amend the class definitions following appropriate discovery.

50. **Numerosity**: The exact size of the Class is unknown and unavailable to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant faxed unsolicited advertisements to thousands of individuals and entities who fall into the definition of the Class. Class membership can be easily determined from Defendant's records.

51. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff is a member of the Class, and if Defendant violated the TCPA with respect to Plaintiff, then they violated the TCPA with respect to the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct.

52. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a) How Defendant gathered, compiled, or obtained fax numbers of Plaintiff and the Class;

b) Whether Defendant's faxes advertised the commercial availability or quality of property, goods, or services;

c) Whether Defendant sent the fax advertisements without first obtaining prior express permission or invitation from Plaintiff and the Class to do so; and

d) Whether Plaintiff and the Class are entitled to treble damages based on the willfulness of Defendant's actions.

53. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex

class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant have no defenses unique to Plaintiff.

54. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

55. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

**<u>FIRST CAUSE OF ACTION</u>**
**Violation of 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Unsolicited Fax Message Class)**

56. Plaintiff incorporates and realleges the prior paragraphs of this complaint as if fully set forth herein.

57. The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement. . . ." 47 U.S.C. § 227(b)(1)(C).

58. The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

59. The faxes sent by Defendant advertised the commercial availability and quality of its goods and services and were commercial in nature. Therefore, Defendant's faxes are advertisements under the TCPA.

60. Defendant sent the facsimile advertisements at issue to Plaintiff and other members of the Class without their prior express invitation or consent, and despite the lack of an existing business relationship between them and members of the Class.

61. By sending the unsolicited advertisement faxes at issue to Plaintiff and members of the Class without their prior express invitation or permission, Defendant violated 47 U.S.C. § 227(b)(1)(C).

62. As a result of Defendant's conduct, Plaintiff and the members of the No Consent Class suffered actual damages, including the loss of use of the recipients' fax machines during the time required to receive, review and route the unauthorized faxes, as well as increased labor

expenses.

63. Plaintiff and the Class are therefore entitled to a minimum of $500 in damages for each violation under 47 U.S.C. § 227(b)(3)(B). To the extent Defendant's misconduct is determined to be willful, the Court should treble the amount of statutory damages under 47 U.S.C. § 227(b)(3).

64. Additionally, as a result of Defendant's unlawful conduct, Plaintiff and the other members of the Class are entitled to an injunction under 47 U.S.C. § 227(b)(3)(A), to ensure that Defendant's violations of the TCPA do not continue into the future.

**PRAYER**

WHEREFORE, Plaintiff Kenneth A. Thomas MD, LLC, on behalf of itself and the Class, prays for the following relief:

a. An order certifying the Class as defined above, appointing Kenneth A. Thomas MD, LLC as the representative of the Class, and appointing its counsel as Class Counsel;

b. An order declaring that Defendant's actions, as set out above, violate the TCPA;

c. An order declaring that Defendants transmitted unsolicited fax advertisements to Plaintiff and members of the Class without their prior express invitation or permission, that the advertisements failed to satisfy the applicable statutory requirements for the established-business-relationship exception, and enjoining Defendants from further violations of the TCPA;

d. An award of statutory damages;

e. An award of pre-judgement interest and costs; and

f. Such further and other relief the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**KENNETH A. THOMAS MD, LLC**, individually and on behalf of all others similarly situated,

Dated: November 9, 2026.

By: *<u>/s/ Nayeem N. Mohammed</u>*

Nayeem N. Mohammed
Texas Bar No. 24082001
539 W. Commerce St. # 1899
Dallas, TX 75208
972-767-9099
Email: nayeem@nnmpc.com

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Pro hac vice motion forthcoming

*Attorneys for Plaintiff and the Putative Class*